OWEN J. HESSION *vs.* MAYOR AND COUNCIL OF WILMINGTON.

New Castle County, May Term. 1893.

**Municipal Corporation. Negligence.**—A municipal corporation is liable for damages resulting from an obstruction in a public sewer caused by sand, filth, and refuse negligently permitted by the city to be and remain in the streets to such an extent that the water cannot vent, but is dammed up, and forced back upon the premises of a private individual.

**Municipal Corporation.**—If by reason of an extraordinary fall of rain water which the sewers, even if clear, could not have vented the damage would have resulted just the same the city would not be liable.

**Same. Quasi Judicial Powers.**—Where a municipal corporation has full and exclusive power to determine the plans of sewers within its limits, and also to carry those plans into execution, the making of the plans both of construction and repair or enlargement is a *quasi* judicial or discretionary power or duty, and for any fault or defect in the *bona fide* exercise of such power and duty there is no liability.

**Same.**—The determination of the time and plans, for altering and enlarging sewers already built, even when known to the City to be inadequate, is as much within the discretion of the department, as the plans, time, and place for the original building of sewers; and no action lies for the failure of the City to remedy such inadequacy even after notice thereof, where the city has acted in good faith and not wilfully and wantonly in such failure to remedy the defect.

**Same. Ministerial Duties. Negligence.**—The execution of the plans in the actual construction, repair and cleansing of sewers is a ministerial duty, for any fault or negligence in the performance of which the city is liable.

**Evidence.**—Where the question is whether the overflow of a sewer was caused by an extraordinary rainfall, the testimony of an engineer as to the necessary capacity of a sewer in that locality for ordinary occasions is admissible.

**Witnesses. Practice.**—More than six witnesses may be allowed to prove an extraordinary rainfall throughout a large district.

This was an action on the case to recover damages for the flooding of a storehouse and premises with water which backed up

from a public sewer by reason, as was alleged, of its incapacity to carry off the same. The facts were that on the 29th day of July, 1891, the plaintiff was the owner and occupyer of a storehouse and premises, No. 817 Lancaster avenue, formerly known as Front street, in the city of Wilmington. From 1882 up to that time he had there conducted the business of a dealer in flour, feed, coal, hay, mill-feed and grain. On reaching his place of business that morning about 7 o'clock he found his premises had been flooded with water, mud, and filth, his stock of goods and building being thereby damaged. For a week thereafter his business was interrupted and injured. The actual total loss arising therefrom, by his own estimate, being the sum of seven hundred and forty-two dollars and twenty-five cents, which included the value of the stock destroyed or damaged, the cost of repairs to the building, and the loss from interruption of his business resulting from the flood.

The premises of the plaintiff were located on Lancaster Avenue, between Monroe and Adams Streets, at the lowest point of the watershed or grade of the avenue, and just above or north of the junction of the Shipley Run sewer, which is located on Monroe Street, and Norris Run sewer, which is located on Adams Street, both sewers being artificial drains built by the City of Wilmington to carry off the sewerage and surface water of that section; built chiefly in the bed of the natural streams of Shipley Run and Norris Run, which drained the same area before any sewers were built. These two sewers formed a junction at the intersection of Monroe and Chestnut Streets, and there entered a common outlet or vent, through which the combined flow of both sewers was carried out through a ditch over the marsh, and emptied into the Christiana River.

The dimensions of the sewers and outlet were as follows: Shipley Run, width, ten feet one inch; height, five feet eleven inches; Norris Run, width, seven feet two inches; height, five feet ten inches. The dimensions for the outlet of these two sewers were as follows: width, eleven feet; height, five feet.

At the time of the damage complained of, that part of the Norris Run or Adams Street sewer, between Second and Third

Streets, was open and uncovered; following, however, the bed of the original natural drain or water course. The damage resulted from a heavy rainfall which occurred on the night of the 29th of July, 1891, the water from which did not vent through the sewer, but backed up and flooded the streets and the premises of the plaintiff.

There had been overflows and backing of water from the sewers and damage occasioned thereby at sundry times for several years prior to the day mentioned. The defendant had notice of the alleged insufficiency of the sewer and outlet from its own engineers, from committees of Council appointed to investigate the matter, by the repeated floodings, and by notice given repeatedly by private individuals who claimed that their property had been damaged at times by overflows.

The evidence was conflicting upon the question whether it was an extraordinary rainstorm. At the time of the storm a large quanity of stone and sand had been placed upon Lancaster Avenue for the purpose of repairing the street and the sand was washed down through the sewer.

At the trial in order to prove what would be an extraordinary rainfall there was offered and admitted, subject to objection, the testimony of engineers as to the necessary capacity of a sewer in the locality for all occasions.

The plaintiff proposed to test the severity of the storm by observations made at different points in the designated area, embracing several separate and distinct methods. The defendant objected to more than six witnesses being called for this purpose, contending that the severity of the storm being only one fact the number of witnesses under the practice was restricted to six.

The Court (CULLEN, J. dissenting) ruled that, as the fact sought to be proved, consisted of an aggregation of separate facts and observations made at different points, the rule did not apply and more than six witnesses were allowed.

*Bird*, for the plaintiff, asked the Court to instruct the jury that if they believe from the evidence that the outlet to Shipley

Run sewer was insufficient in size to vent the water flowing into it, and that the defendant had actual notice thereof or constructive notice thereof by repeated overflows of the sewer and damage to private property, and after such notice negligently failed within a reasonable time to adopt such remedial measures as experience had shown to be necessary in order to abate the nuisance ; and that by reason of the said negligence of the defendant the plaintiff was injured by reason of water overflowing from said sewer as the result of the insufficiency of said sewer ; then the defendant is liable, provided the rainfall was of such a character as might be expected occasionally or frequently to occur; 2 Dill. Mun. Cor. §§ 1046,. 1047, 1049, 1051a. 1 Shearm. & Redf. Negl. §§ 274-5 ; Jones, Negl. Mun. Corp. §§ 142–5 ; 2 Thomp. Negl. 742 ; Ray, Negl. Imp. Dut. 323–8 ; *Harrigan vs. City of Wilmington,* 8 Houst. 174 ;. s. c. 12 Atl. Rep. 779 ; *Seifert vs. City of Brooklyn,* 101 N. Y. 136 ; s. c. 4 N. E. Rep. 321 ; *Hitchins vs. City of Frostburg,* 68 Md. 100 ; *Dixon vs. Baker,* 65 Ill. 519 ; *Boston vs. Belting Co.,* 149 Mass. 44 ; s. c. 20 N. E. Rep. 320 ; *Noonan vs. Albany,* 79 N. Y. 470 ; *City of Houston vs. Bryan,* 22 S. W. Rep. 231 ;. *Defer vs. City of Detroit,* 34 N. W. Rep. 680 ; *Stanchfield vs. Newton,* 142 Mass. 110 ; *Lehn vs. City of San Francisco,* 66 Cal. 76 ; *Ashley vs. Port Huron,* 24 Am. Rep. 552 ; *Baltimore Railroad Co· vs. Fifth Baptist Church,* 108 U. S. 317.

He contended that if the city, under the direction of a competent engineer, constructs a sewer insufficient in size, it would not be liable for damages caused by the first overflow of the sewer, because the city acted in the exercise of its *quasi*-judicial or discretionary power and was in no wise negligent; but, if without taking scientific counsel it undertakes to plan and construct a sewer· and is thereby negligent, its judicial or discretionary power will not protect it from responsibility, nor should it. *Harrigan vs. Mayor and Council of Wilmington,* 8 Houst. 174. This is based upon the ground that the only rule that has any support in principle is that for error in judgment in devising a plan there is no liability, but there is a liability where the lack of care and skill

in devising the plan is so great as to constitute negligence; *Stanch-field vs. Newton*, 142 Mass. 110; *Pyle vs. City of Minkatol*, 31 N. W. Rep. (Minn.) 863; *Lehn vs. City of San Francisco*, 66 Cal. 76; *Spelman vs. City of Portage*, 41 Wis. 144; *Dixon vs. Baker*, 66 Ill. 519; *City of Eufaula vs. Simmons*, 6 So. Rep. (Ala.) 47; *Field vs. West Orange*, 56 N. J. Eq. 120; *Jacksonville vs. Lambert*, 62 Ill. 519; *Lewenthal vs. Mayor, etc.*, 61 N. Y. 520; *Deffer vs. City of Detroit*, 34 N. W. Rep. (Mich.) 680; *Atlanta vs. Warnock*, (1892) 18 S. E. Rep. (Ga.) 135; *Monticello vs. Fox*, 28 N. E. Rep. (Ind.) 1926; *Gillison vs. Charleston*, 16 W. Va., 282; s. c. 37 Am. Rep. 763; *Rhoads vs. City of Cleveland*, 10 Ohio 160.

*A fortiori* should it be liable for negligence in not taking proper steps to remedy defects in a sewer constructed by it, which it has discovered to be grossly insufficient in capacity and destructive to private property, since it has full power and means at its command to do so. The *quasi*-judicial or discretionary power of a municipal corporation should end with the plan, location, and construction of the sewers, and should not be held to extend to the failure of the corporation to remedy defects therein after notice.

If the injury is caused by the sole act or neglect of the municipal authorities and the city has the power and means by taxation, or otherwise, to remedy the defective sewer, and yet under the conditions above defined and limited, continues its use, it is liable unless it can justify its acts or omission by its legislative power and duties relating thereto; 2 Dill. Mun. Corp. §1051a.

Under the usual constitutional limitations on legislative actions, it is at least doubtful whether power so injurious to, and so destructive of private rights could be directly conferred; and, if not, how can they be held to be obliquely granted, or to be embraced in large and general grants of authority? Such delegations of authority are to be construed favorably to the rights of the citizen, and are reasonably to be considered as implying a condition that it shall not be exercised so as to inflict unnecessary, or, at all events, negligent injury upon private property; 1 Shearm. & Redf. Negl. §§ 274–5; Jones, Negl. Mun. Corp. §§ 142–5; 2 Thomp. Negl.

742; Ray, Negl. Imp. Dut. 323–8; 15 A. & E. Encyc. of Law, 1142; 8 id. 24.

*Bradford,* for the defendant, contended that the street and sewer department of the City of Wilmington is vested with the exclusive jurisdiction and control over the streets and sewers of the city by the act of April 20, 1887; 18 Del. Laws, 352; which jurisdiction and control, prior to the passage of that act, were vested in the City Council; 17 Del. Laws, 424.

The function to be exercised by the department with respect to the grades and elevation of the streets, and to the location, size and capacity of culverts, sewers and inlets is essentially of a discretionary and *quasi*-judicial nature, involving the exercise of judgment by the department and the choice of plan. The duties and powers of the department in such matters are strictly of a public nature and relate to works of public improvement. Except in so far as restrained by constitutional provisions, the Legislature has supreme power over the property of all citizens of the State, and there is no such provision securing a citizen against incidental or consequential damage from the construction by the public authorities of works for public improvement. Section 7 of Article 1 of the Constitution of Delaware relates to the rights of accused persons in criminal prosecutions. Section 8 relates to the taking or application of private property to public use through the exercise of the right of eminent domain. Section 9 of the same article guarantees due course of law to persons for injuries done them with respect to their property. See *Wilson vs. Balto. & Phila. R. R. Co.,* 5 Del. Ch. 524–537. Section 9 does not define what shall constitute an injury, but merely affords remedy by due course of law for injuries.

It follows that a corporation carrying on public improvements pursuant to statutory authority is not liable for consequential damages to individuals; it is *damnum absque injuria; Smith vs. Corporation of Washington,* 20 How. 135; *Lansing vs. Smith,* 8 Cow. [146]; *Green vs. Borough of Reading,* 9 Watts 382; *O'Connor vs. Pittsburg,* 18 Pa. 187; *Monongahela Bridge Co. vs. Kirk,* 46 *id.*

112; *Transportation Co. vs. Chicago*, 99 U. S. 635; *Inhabitants vs. City of New Orleans*, 14 La. Ann. 452 ; *City of Anderson vs. East*, 117 Ind. 126 ; *Methodist, etc., Church vs. Baltimore*, 6 Gill 391, 403 ; *Mayor of Athens vs. Comak*, 75 Ga. 429 ; *Hill vs. Board of Alderman*, 72 N. C. 55 ; *Moses vs. Risdon*, 46 Ia. 251 ; *Wells vs. Mayor and Council of Atlanta*, 43 Ga. 67.

Therefore the city cannot be held liable for damage resulting from any defect or insufficiency in the plan of its streets, culverts, sewers, or inlets ; *Magarity vs. City of Wilmington*, 5 Houst. 530; *Johnson vs. District of Columbia*, 118 U. S. 19 ; *Carr vs. Northern Liberties*, 35 Pa. 324; *Roll vs. City of Indianapolis*, 52 Ind. 547 ; *Rozell vs. City of Anderson*, 91 id. 591 ; *Harrigan vs. City of Wilmington*, 8 Houst. 140 ; *Collins vs. City of Philadelphia*, 93 Pa. 272 ; *Detroit vs. Beekman*, 34 Mich. 125; *Toolan vs. City of Lansing*, 38 Mich. 315 ; *Lynch vs. Mayor*, 76 N. Y. 60 ; *Kavanagh vs. City of Brooklyn*, 38 Barb. 232 ; *Flagg vs. City of Worcester*, 13 Gray 601.

The city in the exercise, through the street and sewer department, of its discretionary or *quasi*-judicial power relating to streets and drainage, stands in the same light as would the State had the latter exercised the same power; *Monongahela Nav. Co. vs. Cooms*, 6 W. & S. 101 ; *City of St. Louis vs. Boffinger*, 19 Mo. 9.

The doctrine of negligence, as applied to the performance by the street and sewer department of its ministerial duties, manifestly has no application to the exercise of the discretionary or *quasi*-judicial power involved in the determination of the grade of streets and of the size, number and location of culverts, sewers, and inlets.

It is not the function of juries to pass upon the discretionary or *quasi*-judicial power exclusively vested in the street and sewer department. The Legislature has seen fit to repose that power exclusively in the street and sewer department; and the consequences which would result from allowing different juries perchance to arrive at different conclusions with respect to the same point in any grade, or culvert, or sewer, or inlet, are so manifest as not to require elaboration.

The occasional overflowing of the plaintiff's premises by reason of the grades of streets or of the size or insufficiency in size of culverts, sewers or inlets is not a taking or application of his property for public use within the meaning of the provision of the constitution of Delaware relating to the exercise of the power of eminent domain; *N. Y. & Erie R. R. Co. vs. Young*, 33 Pa. 175; *Waters vs. Village of Bay View*, 61 Wis. 642; *City of Elgin vs. Eaton*, 83 Ill. 535, and cases cited upon the first general principle, *supra*.

Public improvement are undertaken for the general welfare, and not for the purpose either of benefiting or saving from loss any particular individual. Therefore in carrying on public improvements the general good must prevail over individual inconvenience or detriment, and to this extent must be recognized *salus populi suprema est lex; Radcliff's Ex'rs. vs. Brooklyn*, 4 N. Y. 195; *Ely vs. City of Rochester*, 26 Barb. 133; *Hollister vs. Union Co.*, 9 Conn. 436; s. c. 25 Am. Dec. 36; *City of Little Rock vs. Willis*, 27 Ark. 572; *White vs. Yazoo City*, 27 Miss. 357; *Fitchburg R. R. Co. vs. V. & M. R. R.*, 3 Cush. 58.

The power to determine the plan of streets and of culverts, sewers and inlets having been exclusively conferred upon the street and sewer department, and being essentially discretionary and *quasi*-judicial in its nature, the city cannot be held liable for any damage resulting from the non-exercise of such discretionary or *quasi*-judicial power, *Mills vs. City of Brooklyn*, 32 N. Y. 489; *Lehigh Coal Co. vs. Hoffort*, 116 Pa. 119; *Hines vs. City of Lockport*, 50 N. Y. 236; *City of Denver vs. Capelle*, 4 Col. 25; *Horton vs. Mayor and City Council*, 4 Lea (Tenn.) 39; *McDade vs. Chester City*, 117 Pa. 414; nor for the damage resulting from the manner in which it exercises such discretionary or *quasi*-judicial power; *Duke vs. Mayor and Council of Rome*, 20 Ga. 635.

If the city officials after consultation with their engineer have adopted a plan, it is a conclusive determination; and no liability can attach for any incidental or consequential detriment resulting therefrom.

It is true that in *Harrigan vs. City of Wilmington, supra,* the late Chief Justice Comegys in his charge to the jury said that the plaintiff in that case would be entitled to recover if his premises were flooded with back water caused by the inability of a sewer to vent the water brought there by another sewer and also the rain-water, if the city had actual or constructive notice of the insufficiency of the first mentioned sewer to discharge the water sent down to it by the other sewer.

But this statement was certainly in direct contravention of the broad doctrine laid down in the same case and also in *Magarity vs. City of Wilmington, supra.*

LORE, C. J. (charging the jury.)

The plaintiff complains that the damage in this case resulted from one, or both of two causes.

First. The negligence of the city in permitting the sewer and its inlets, to be obstructed by sand, carelessly dumped on Lancaster Avenue for the purpose of paving the same, cobble stones, and other refuse, in such quantities that the rainfall was obstructed thereby and could not vent through the common outlet.

Second. Because the city, in pursuance of no general plan, but in detached portions, sometimes in the interest of private adjoining land owners, built these two sewers originally, and introduced private drains and lateral branches therein subsequently, in such manner that the common outlet was manifestly inadequate to vent the water conveyed to it.

That the city neglected to remedy the defects after it had notice thereof, which notice was given by its own engineers, by the citizens damaged, and by the repeated floodings of this particular district. That the city had knowledge of these defects for more than ten years prior to the damage in this case complained of.

The defendant on the other hand claims that the damage arose :

First. From an extraordinary rainfall or storm against which it was not bound to provide.

Second. Because the sewers, their common vent or outlet, and the inlets thereto, although built at different times, and in detached portions, were in each case built in pursuance of plans, at the time approved by the duly constituted authorities, under a *quasi*-judicial or discretionary power vested in the City; and that for any damage resulting from any default or inadequacy in the plan and size of sewer, outlet or inlets thereof, or by failure of the City to enlarge the same to meet the growing demands, no action will lie against the City, unless that discretion was exercised, wilfully and wantonly, to the damage of the person injured.

The City of Wilmington through its Street and Sewer Department, has full and exclusive power to determine the plans of streets, culverts, sewers and inlets, within its limits, and also to carry those plans into execution. The making of such plans is a *quasi*-judicial or discretionary power or duty. The execution of the plans, that is the actual building of the sewer when so made, is a ministerial duty. For any fault or defect in such plans, resulting in damage to the individual citizen, the City is not liable; for any fault or defect in carrying such plans into execution, the City is liable; *Clark vs. the City of Wilmington*, 5 Harring. 243; *McGarrity vs. the City of Wilmington*, 5 Houst. 530; *Harrigan vs. the City of Wilmington*, 8 Houst. 140; s. c. 12 Atl. Rep. 779.

Keeping this primal distinction in view, you will note; that the making of the plans for the original Shipley Run and Norris Run Sewers, and their enlargement, additions and improvement, whether in whole or in part; was judicial or discretionary; that the actual execution of such plans, or the building of such sewers were ministerial duties. The keeping of sewers, when so built, in repair and cleansing the same is also a ministerial duty.

Therefore, if the evidence shows to your satisfaction, that on the 29th day of July, 1891, the said sewers, in any part, were obstructed by sand, filth and refuse, negligently permitted to be and remain there by the City, to such an extent that the water could not vent, but was dammed up and forced back upon the

premises of the plaintiff, thereby causing the damage complained of, the City is liable, and he is entitled to recover.

He would not be entitled to recover, however, even if the sewers were obstructed, if the damage would have resulted just the same, because of the extraordinary fall of rain-water, which the sewers, even if clear, could not have vented, so as to prevent the damage. In that case the damage would be the result of the severity of the storm, irrespective of the negligence of the City, even if such negligence existed.

Should you be satisfied from the evidence, that the storm of July 29th, 1891, was of such extraordinary character, or as it has been called in one of our cases by the late Chief Justice Comegys, " phenomenal," that the rules governing the construction of sewers to vent surface water in this latitude, did not require the City to provide for such a storm when the sewer was constructed, the plaintiff. is not entitled to recover ; because the damage in that event, resulted from the act of God and not from the negligence of the City. The City cannot be held responsible for damages which it could not reasonably foresee or prevent. In determining this question, the evidence of the engineers, who have given special study to the subject of drainage, is entitled to great weight. According to their evidence, which is not contradicted, sewers in this latitude in 1891, were not built to carry off a larger rainfall than two and one-half inches per hour; that the rule now is three inches per hour. If you believe their testimony, you have an accurate gauge of what constitutes an extraordinary storm in this latitude, that is, any storm with a rainfall exceeding two and a half or three inches per hour would be an extraordinary storm, against which the City would not be bound to provide.

If the storm of July 29th, 1891, was of such an extraordinary character, and the damage resulted therefrom only, the City would not be liable. It is conceded on both sides that that storm was severe ; but there is a marked conflict of testimony as to the downfall of water at different times during the continuance of the storm. This testimony you must reconcile if you can ; if you can-

not so reconcile it, you should give credit to those witnesses whom you believe under all the circumstances are most entitled to your confidence and belief.

On the part of the plaintiff, it is contended, that the sewers, vent, and inlets when constructed, and after they were built, were manifestly inadequate to meet the purposes of their construction, and the increased demands made upon them by the volume of sewerage and water thrown into them, by additional private drains, and lateral branches; that of this inadequacy the City for many years had full notice from the annual reports of its engineers, the complaints of citizens on the line of the sewers, and from the frequent overflows of that part of the drained district; that the City did not remedy the defect or enlarge the capacity of the sewer; and that by reason of such neglect, after such notice, the City is liable for the damage done in this case.

Upon this point there is conflict of authority, and two distinctly marked classes of cases. The one holding that " When the exercise of the judicial or discretionary power by a municipal corporation results in a direct and physical injury to the property of an individual, which from its nature is liable to be repeated and continuous, but is remedial by change of plans and the adoption of prudential measures, the corporation is liable for such damage as occurs from the continuance of the original cause, after notice and the omission to adopt measures to remedy the evil." This is the doctrine of the leading case of *Seifert vs. the City of Brooklyn*, 101 N. Y. 136. The case was decided in 1886 by the Court of Appeals of that State. The doctrine is supported more or less broadly by the text books and reports cited by the learned counsel for the plaintiff. In many of these cases the language is somewhat vague, and a distinction seems to be drawn between sewerage which is created by the City and surface water or rainwater.

On the other hand, in the leading case of *Mills vs. the City of Brooklyn*, 32 N. Y. 489; where the authorities of a city caused a sewer to be constructed for a locality which included the plaintiff's premises, but which though not itself a nuisance, was insufficient

to carry off the water, it was held that the city was not responsible
for plaintiff's damage occasioned by the overflow.   This case,
although older than the Seifert case, seems to have been very care-
fully considered.    The opinion was delivered by Chief Justice
Denio, one of the ablest judges of the State of New York, a State
fertile in great lawyers.   The Court there say, "the grievance of
which the plaintiff's complain, is that sufficient sewerage to carry
off the surface water from their lot and house has not been pro-
vided.   A sewer of a certain capacity was built, but it was insuffi-
cient to carry off all the water which came down in a rainstorm,
and the plaintiff's premises were to a certain extent unprotected.
But it is not the law that a municipal corporation is responsible in
a private action for not providing sufficient sewerage for every or
for any part of a city or village.   The duty of draining the streets
or avenues of a city or village, is one requiring the exercise of de-
liberation, judgment, and discretion.   It cannot in the nature of
things, be so executed that in every single moment, every square
foot of the surface shall be perfectly protected against the water
falling from the clouds upon it.   This duty is not in a technical
sense a judicial one, for it does not concern the administration of
justice between citizens; but it is of a judicial nature, for it re-
quires the same qualities of deliberation and judgment.   It admits
of a choice of means, and the determination of the order of time
in which improvements shall be made.   It involves also a variety
of prudential considerations relating to the burdens which may be
discreetly imposed at a certain time, and the preference which one
locality may claim over another.   If the owner of property may
prosecute the corporation on the ground that sufficient sewerage has
not been provided for his premises, all these questions must be de-
termined by a jury, and thus the judgment which the law has
committed to the City Council, or to an administrative board, will
have to be exercised by that judicial tribunal.   The court and jury
will have to act upon a partial view of the question for it would be
impossible that all the varied considerations which may bear upon
it could be brought to their attention in the course of a single trial.

Such a system of law would be as vexatious in practice as it is un-warranted in law."

This opinion of Chief Justice Denio strikes us as containing better law and more consonant with reason and principle, than that of Chief Justice Ruger in *Seifert vs. the City of Brooklyn.* It is also sustained by the case of *Carr vs. Northern Liberties*, 35 Pa. 324; by *Johnson vs. Dist. Columbia*, 118 U. S. 19; and many other authorities cited by the counsel for the defendant. The authorities all agree, that municipal corporations are exempt from liability, for damages resulting to private individuals, from the *bona fide* exercise of the *quasi*-judicial or discretionary power in locating and planning sewers. The doctrine which would make the City liable for inadequacy of sewers and failure to remedy the same, is therefore a departure from that principle, and in the line of relief from what seemed to be great hardship in many individ-ual cases, a new movement in the nature of equitable relief against what theretofore had been well settled law.

Adjudged cases likewise agree, that in the location, time of construction, and plans of sewers in the first instance, the City act-ing in good faith, and within its *quasi*-judicial power and discre-tion, will not be liable for any private damage that may ensue. If this be so, by what reason can the conclusion be reached, that the City should be held liable, when its acts in like good faith and within like discretion in the plans for and the time of the altera-tion and enlargement of such sewers.

Can it be any more a matter of judgment and discretion, to fix the time of building, the location and plans of sewers in the first instance, than to determine the same questions as to the alteration or enlargement of sewers to meet the exigencies of a growing city?

In the case at bar, the street and sewer department of the City of Wilmington, has in its charge all the streets, and all the sewers of the City. By it all the money appropriated for such purposes is in its discretion to be expended at such times, in such places, and on such works, as may best serve the common good. It has the whole field in view; knows the needs of each and every part, and

can only reasonably exercise that discretion, when left free to do the work at the times, in the places, and upon plans in its judgment most beneficial. It might be true that the sewers in Monroe and Adams streets needed enlargement; and yet at the same time it might be equally true that other parts of the City had greater needs of such work and that the public good would be be best promoted by using the money available elsewhere. Other portions of the City also might reasonably demand of the department a ratable expenditure of public money for their benefit and for even such facilities as have already been given to the owners of property upon the sewers in question before further outlay should be made upon such sewers.

If therefore, a private citizen who has been damaged by the failure of the City to remedy the inadequacy of sewers upon notice of such inadequacy, may by action compel the City to expend public money for the benefit of his particular locality, when in the discretion of the department it should be expended elsewhere, we should substitute the verdict of a jury, for the judicial discretion of the department, and thus virtually destroy such discretion, and deprive the department of the very power with which it was clothed by the Legislature, to be by it used for the best interests of all the people.

It would under penalty of suit substitute the interests of one man and one locality, for the interests of the whole people and the whole City. It would substitute the verdict of a jury upon a hearing of the needs of one man and one locality, for the discretion of the street and sewer department, which hears and knows the needs of all the people and of every locality.

This line of reasoning might be carried to an almost indefinite extent, but we think it unnecessary. It must be manifest, that this doctrine is far-reaching and very dangerous; indeed subversive of the very purpose for which the Legislature granted discretionary power to the City.

It is true that in the case of *Harrigan vs. the City of Wilmington* already cited, Chief Justice Comegys says: " That the plaintiff

in that case would be entitled to recover, if his premises were flooded from back water, caused by the inability of the Reed Street sewer (the very sewer in question here) to vent the water poured upon the block by the Adams Street sewer, and also that which fell from the clouds upon the surface, if the City had actual or constructive notice of the insufficiency of the Reed Street sewer to promptly discharge the water sent down to it by the Adams Street sewer."

We do not see that the question before us was raised by the facts in the Harrigan case ; or that the learned Chief Justice, for whose opinions we entertain the most profound respect, had the question specifically before him for adjudication. Indeed we understand that it is admitted in the case now on trial by counsel on both sides, that the question is a new one and never before broadly and fully presented for the adjudication of the Court. We do not feel that the utterance in the Harrigan case was intended to decide the broad question now presented and do not feel bound by the language there used to the extent claimed. If such, however, should be its intent and scope, it is inconsistent with and destructive of the doctrine laid down in the cases of *Clark vs. the City of Wilmington* and *McGarrity vs. the City of Wilmington,* heretofore cited, and with the same doctrine announced and approved in the Harrigan case itself.

Therefore we conclude that the determination of the time and plans, for altering and enlarging sewers already built, even when known to the City to be inadequate, is as much within the discretiou of the department, as the plans, time, and place for the original building of sewers; and that no action lies for the failure of the City to remedy such inadequacy even after notice thereof, where the city has acted in good faith and not wilfully and wantonly in such failure to remedy the defect.

Much consideration has been given to this part of the case, because its gravity and importance far transcends the amount involved in this particular case, and establishes a principle which

might make this department of municipal government a failure or taxation an unbearable burden.

It is one of the incidents of municipal as well as of other forms of civilized government, that the public good must take precedence over that of any one individual. That the one who suffers damage from such cause must get his only reward in the benefit to the many and in the general good of the community in which he lives. It is the penalty that he must pay for all other benefits conferred by such government. In all such cases he suffers a loss which the law fitly terms "*damnum absque injuria*" (damage without injury.)

Therefore in conclusion, gentlemen, if you believe from the testimony which has been offered in this case, that the sewers, as constructed, were sufficient to carry off the water in ordinary rainstorms, then your verdict should be for the defendant; for no principle of law is better settled than that if the fall of water be excessive or phenomenal, any damage that ensues therefrom cannot be charged to the City. You have heard the testimony given as to the extent of the storm, the size of these sewers and those constructed elsewhere, and upon this testimony must make up your verdict.

If you are satisfied that the damage resulted from defects in the plan or the inadequacy of the sewer, although known to the city, this being within the discretion of the department, your verdict should be for the defendant.

If you believe that the damage resulted from the extraordinary storm or fall of rain against which the city was not reasonably bound to provide, your verdict should be for the defendant.

But if you believe the damage resulted from obstruction in the sewer by reason of sand, stones and other refuse which the city negligently permitted to be and remain in the sewer, or from the imperfect and unworkmanlike manner in which the work of the actual building of the sewers and connections was actually performed, your verdict should be for the plaintiff and for the amount

claimed, viz., $742.25, as there is no dispute upon the amount of the damage done.

It is only necessary further to say that as the plaintiff claims that the damage resulted from the negligence or default on the part of the city, the burden of proof is upon the plaintiff to show such negligence or default by a preponderance of evidence to your satisfaction. If such negligence or default, however, is shown and the city seeks to relieve itself on the ground of an extraordinary storm, the burden of proof is then on the city to show to your like satisfaction that the storm was extraordinary or phenomenal.

If the evidence on any material issue of the case be contradictory you must reconcile it if you can; if you cannot so reconcile it then you should be governed by the testimony of those witnesses who by their character, intelligence, truthfulness and opportunities of correct observation entitles them to greatest credit.

*The jury disagreed.*

*Ball, Bird* and *Sanborn,* for plaintiff.

*Bradford* and *Vandegrift,* for defendant.