# Strauss, Appellant, *v.* Allentown.

*Waters—Flow of surface water—Municipalities—Damnum absque injuria.*
    A city is not liable to a property owner for the increased flow of surface water over or onto his property, arising merely from the changes in the character of the surface produced by the opening of streets, building of houses, etc., in the ordinary and regular course of the expansion of the city.
    Every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use without negligence unavoidable loss is brought upon his neighbor, it is damnum absque injuria. This rule applies to municipalities as well as to individuals.

Argued Jan. 31, 1906.    Appeal, No. 328, Jan. T., 1905, by plaintiffs, from order of C. P. Lehigh Co., Oct. T., 1903, No. 11, refusing to take off nonsuit in case of Isabella Strauss and Thomas Strauss, her husband, and Henry N. Sleifer v. City of Allentown. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Trespass to recover damages for injuries to a mill race. Before TREXLER, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*Lawrence H. Rupp*, with him *John Rupp* and *Evan Holben*, for appellants.—The city was liable, as there was an accumula-

tion and concentration of an unnatural quantity of water and a change in the nature and character of the watershed : Huddleston v. West Bellevue Borough, 111 Pa. 110 ; Frederick v. Lansdale Borough, 156 Pa. 613.

*Leo Wise,* city solicitor, for appellee.—The nonsuit was properly entered : Brunhouse v. York, 5 York, 164 ; Fair v. Philadelphia, 88 Pa. 309 ; Allentown v. Kramer, 73 Pa. 406 ; Carr v. Northern Liberties, 35 Pa. 324 ; Penna. R. R. Co. v. Marchant, 119 Pa. 541 ; Stork v. Philadelphia, 195 Pa. 101 ; Gift v. Reading, 3 Pa. Superior Ct. 359 ; Munn v. Pittsburg, 40 Pa. 364.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 7, 1906 :

The cause of action is very fairly set out in appellants' argument, thus, " Briefly stated the facts are as follows: Isabella Strauss owns a mill property lying outside but near and along the northern boundaries of the city of Allentown, a municipal corporation of the third class. The water that flows from a watershed, a large portion of which lies within the city limits, drains into the plaintiff's tailrace. As municipal improvements are made the volume of water is very greatly increased. The paving of streets, the opening and extension of streets, the making of gutters and drains, the building of houses, etc., prevents the water from sinking into the ground as it was accustomed to do to a large extent, and accumulates large volumes of water and accelerates its force so that great quantities of debris are carried into the tailrace and a deep gully has been washed out. The volume of water is of itself sufficient to cause back water in the tailrace. For these reasons the value of the mill property has greatly decreased. The city has made no effort to prevent the damage to the plaintiff's property. To recover for the damage that has been caused by the depreciation in the value of the property because of the interference with the free operation of the mill due to the dead water accumulated in, and the debris carried into, the tailrace the plaintiffs bring this suit." This statement, however, must be supplemented by the important facts that although the city extended its limits so as to include the land in regard to which this controversy arises, it had not in any degree enlarged the

area of the watershed or changed the flow of the surface water in any way except as a consequence of the gradual and ordinary development of rural into urban property. The city had not diverted the water into any artificial channels and it flowed into plaintiff's tailrace as it had done before, because the race was at the lowest point of the watershed. The city had the power to build sewers or culverts to carry off the water, but had not done so.

The question therefore is, in brief, is the city liable to a property owner for the increased flow of surface water over or onto his property, arising merely from the changes in the character of the surface produced by the opening of streets, building of houses, etc., in the ordinary and regular course of expansion of the city.

It is conceded by counsel for both parties that except a common pleas case which will be noticed later, they have found no Pennsylvania decision on the question, and my own supplemental investigation has found none, and has also disclosed a notable dearth of direct authorities elsewhere.

But the guiding principle for a decision is not at all doubtful, and is of frequent application. Every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use without negligence, unavoidable loss, is brought upon his neighbor, it is damnum absque injuria. This is the universal rule of the common law, and nowhere is it more strictly enforced than in Pennsylvania. After elaborate and repeated argument, and the most mature consideration, it was applied to a case admittedly of great hardship, difficulty and doubt, involving a serious choice of evils, in Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126. No ordinary case could be sufficient to raise a further doubt on the rule of its application where the use is proper and the damage unavoidable: Collins v. Chartiers Valley Gas Co., 131 Pa. 143.

There is no sound reason why the same rule should not apply to municipalities as to individuals. A farmer with a piece of woodland on a hillside may clear out the underbrush or cut down the trees altogether, though thereby the water which had seeped slowly to the lower level is accelerated in its flow, and may cause damage: Kauffman v. Griesemer, 26 Pa. 407. The line of distinction is reached when he cuts an artificial channel

by which what would otherwise be surface water is concentrated and discharged, with greater force on a particular point in the servient land : Miller v. Laubach, 47 Pa. 154.

The same rule must apply to the natural and proper development of a municipality. Cities are authorized to open, grade and improve streets and the abutting lot owners may build according to their requirements. In this natural change and development from agricultural or rural to urban territory some disturbance of the surface drainage is inevitable, but without negligence the municipality is not liable for the results : Carr v. Northern Liberties, 35 Pa. 324. Though a city may be authorized to construct sewers or an adequate system of drainage it is not bound to do so, nor is it liable for an erroneous judgment as to what will be adequate : Fair v. Philadelphia, 88 Pa. 309.

The constitutional provision with reference to property "injured" in the construction of public works, has made no change in the principles applicable to this case : Penna. R. R. Co. v. Marchant, 119 Pa. 541 ; Stork v. Philadelphia, 195 Pa. 101.

As already said the only case in this state upon the precise point is Brunhouse v. York, 5 York, 164, in which BITTENGER, J., upon the same view held the city not liable, and nonsuited the plaintiff. But the cases above cited rest on principles clearly analogous and lead to the same result. And such is the view of the best text-writers.

"In this connection may be considered the liability of municipal corporations for injuries to private property in consequence of being overflowed with water caused by improvements made or work done upon the streets under their authority. And here it is important to distinguish between natural streams flowing in channels between defined and actual banks, and surface water caused by rain or melting snow; for the law relating to them is essentially different, and the powers of the municipality much greater with respect to the latter than the former:" 2 Dillon on Municipal Corporations, sec. 1038 (4th ed.)

"As to surface water, quite different principles apply. This the law very largely regards (as Lord Tenterden phrases it) as a common enemy which every proprietor may fight to get rid of as best he may. The reports contain many instances in

which it has been sought to make municipal corporations liable for damages caused in various ways by surface water to private property. Reference will first be made to cases in which the work of grading or improving the streets has been the cause of injury. Where the damage has resulted solely as a consequence of the proper execution of a legal power by the corporation, it falls within the principles already mentioned, and there is no implied liability therefor: " 2 Dillon, sec. 1039.

" Authority to establish grades for streets, and to grade them, involves the right to make changes in the surface of the ground, which may affect injuriously the adjacent property owners; but where the power is not exceeded, there is no liability, unless created by special constitutional provision or by statute (and then only in the mode and to the extent provided) for the consequences resulting from the power being exercised and properly carried into execution: " 2 Dillon, sec. 1040.

" Where a municipality keeps within the limits of its streets, and within the limits of its jurisdiction, and the injury is wholly incidental to, or consequential upon the exercise of its lawful powers, there is no implied or common-law liability. This is everywhere admitted: " 2 Dillon, sec. 1051.

Judgment affirmed.