# Rielly *v.* Stephenson, Appellant.

*Waters—Surface waters—Shutting out the surface flow—Improvement of lots—Damnum absque injuria.*

The owner of a lot in a city or town, in grading and improving the lot may shut out the surface flow upon his lot without any obligation on his part to prevent it from flowing over the adjacent land, or to lead it by artificial or other means to a sewer or other avenue of escape; but in making the improvement he may not proceed negligently so as to do unnecessary damage to others; nor may he obstruct a natural channel for the flow of the water, or a channel that has acquired the character of an easement; nor may he gather surface water into a body and discharge it on the adjoining land.

On a bill in equity it appeared that the parties owned adjoining lots on an opened and paved street in a city. The land was on a sloping hillside so that the surface drainage from rain, etc., ran over both lots from the rear to the front. The defendant improved his lot first and in so doing raised the grade in parts. He did not change the character or direction of the flow nor add to the volume of it, except that in consequence of the raised grade the water which had previously spread over the surface of both lots now ran over plaintiff's. It did not appear that the defendant was negligent in making the improvement, nor that he closed up any natural channel or any channel acquired by easement. *Held,* that the defendant was not liable to plaintiff for any damages by reason of an increased flow of water on the plaintiff's lot.

Argued April 15, 1908. Appeal, No. 77, Jan. T., 1908, by defendants, from decree of C. P. Luzerne Co., Dec. T., 1907, No. 4, on bill in equity in case of Cornelius M. Rielly v. Joseph Stephenson and Helen Stephenson. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Bill in equity for an injunction. Before HALSEY, J.
The facts are stated in the opinion of the Supreme Court.

The court entered a final decree as follows:
Now, February 8, 1908, this cause came on to be further heard at this term and was argued by counsel and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz. : That the said defendants be forthwith required to make provision by adequate and sufficient means for the flow and passage of surface water which naturally passed into and over the same before they improved their said lot, in such a way as not to cause damage or injury to the property of plaintiff.

*Error assigned* was the decree of the court.

*M. J. Mulhall*, with him *W. L. Raeder*, for appellant.—These defendants had a lawful right in the exercise of their dominion over their soil, if they saw fit, to erect on the rear of their lot, and of its full width, a building or other structure which would have been an impassable barrier to the surface water that reached it, and in order to prevent it from reaching the plaintiff's lot adjoining, they were under no legal duty to take care of it : Bowlsby v. Speer, 31 N. J. L. 351 ; Grant v. Allen, 41 Conn. 156 ; Chadeayne v. Robinson, 55 Conn. 345 (11 Atl. Repr. 592) ; Barkley v. Wilcox, 86 N. Y. 140 ; Strauss v. Allentown, 215 Pa. 96.

*John McGahren*, for appellee.—Natural drainage channels cannot be obstructed by one lot owner, so as to inflict damage and injury upon another : Bentz v. Armstrong, 8 W. & S. 40 ; Davidson v. Sanders, 1 Pa. Superior Ct. 432 ; Davidheiser v. Rhoads, 25 W. N. C. 513 ; Keating v. Pittston, 8 Kulp, 421 ; Lucot v. Rodgers, 159 Pa. 58 ; Glass v. Fritz, 148 Pa. 324 ;

Meixell v. Morgan, 149 Pa. 415; Frederick v. Lansdale Borough, 156 Pa. 613; Bohan v. Avoca Borough, 154 Pa. 404.

OPINION BY MR. CHIEF JUSTICE MITCHELL, October 5, 1908:

The parties own adjoining lots on an opened and paved street in the city of Wilkes-Barre. The land was on a sloping hillside so that the surface drainage from rain, etc., ran over both lots from the rear to the front. The defendant improved his lot first, and in so doing raised the grade in parts. He did not change the character or direction of the flow nor add to the volume of it, except that in consequence of the raised grade the water which had previously spread over the surface of both lots now ran over plaintiff's. It was a natural and inevitable result of the defendant's improvement of his lot, and it is not charged that it was negligently done.

It was averred in the bill that defendant's lot had a dip or hollow which made a natural channel through which the water from plaintiff's lot was accustomed to flow, and that this had been filled up. But the court below expressly refused to find that there had been a channel, and the evidence would not have sustained a finding of such fact. The land in its natural state was uneven with occasional depressions, in which the water would collect temporarily and then gradually drain off. There was nothing that could properly be called a channel.

The learned judge below found all the facts in favor of the defendants, including the following:

" 3. The land, of which both lots are a portion, was originally undulating land used for farm purposes, and it has been laid out in building lots and streets for many years.

" 4. The opening and grading of streets, the construction of sewers, and the erection of buildings in the natural expansion of the city, adjacent to the plaintiff's and defendants' lots, have changed the surface of the land as it existed in a state of nature.

" 7. The opening of Jones street and Essex lane, and the erection of buildings thereon, changed and increased the natural flow of the surface water on the land adjacent to the plaintiff's and defendants' properties."

He also found as matter of law " that the defendants had the right to grade their lot in the manner described without

regard to the natural drainage of the locality." But he added the qualification that " in doing so, however, the owner of a lot must take care of the drainage of the surface water by means of artificial appliances so as not to injure or damage the other or adjacent land holders." The correctness or error of this rule is the question in the case.

The ruling of the learned judge below was made in deference to the language and supposed decision of KENNEDY, J., in Bentz v. Armstrong, 8 W. & S. 40, and the cases of Davidson v. Sanders, 1 Pa. Superior Ct. 432, and McMahon v. Thornton, 5 Pa. Superior Ct. 495, which were based upon it. But the decision in Bentz v. Armstrong was upon a much narrower point, and the language of Justice KENNEDY has been extended to apply to a state of facts to which it was never applicable. The plaintiff in that case claimed the right to turn the rain water which fell upon his lot, and also the water of a spring on his lot, on to the lot of defendant. The latter placed an obstruction on his own lot which turned the water back on the plaintiff's lot. The trial judge charged the jury that the plaintiff had established his right to an easement. On this point the case was reversed, KENNEDY, J., saying, " It does not appear to us that any facts have been testified to going in the slightest degree to establish the plaintiff's right to an easement such as he claims in this case." That is the whole extent of the actual case decided. But Justice KENNEDY then proceeds to discuss a feature of the case that had evidently been argued, and his language is certainly as favorable to the defendants in the present case as to the plaintiff : " In the purchase of lots of ground laid out and sold for the purpose of building up towns or cities thereon, it has ever been understood, and such has been the practice and usage, too, that the natural formation of the surface will, and indeed must, necessarily, undergo a change in the construction of buildings and other improvements that are designed and intended to be made. In doing this it would seem to be right that the common benefit and convenience of the respective owners of adjoining lots should be consulted and attended to, but certainly no one ought to be restrained from improving his lot in such a manner as to make it answer the purpose for which it was laid out, sold and purchased, if practicable, without overreaching

upon his neighbor's lot. He ought to be permitted to form and regulate the surface of it as he pleases, either by excavating or filling up, as may be requisite to the convenience and enjoyment of it, taking care, however, not to produce any detriment or injury to his neighbor in the occupation or enjoyment of his adjoining lot." · So far this is sound law and in accordance with all the decisions. But when the learned justice adds : " It is of great importance that the water from each lot arising from rain or other cause should be conducted by the owner or occupier thereof, if he wishes to have it removed, directly from it to a sewer or other place appropriate for the receipt and discharge of the same, and not be turned or let on to an adjoining lot, . . . . and it appears to me to be the duty of the owner of each lot if he improves it to do it in such way, if practicable, as to lead and conduct the water that happens to fall upon it, off in the way mentioned." This is mere dictum not authorized by sound general principles and not consistent with the rules previously established in the same opinion.

The owners of lots in cities and towns buy and own with the manifest condition that the natural or existing surface is liable to be changed by the progress of municipal development. All such owners have equal rights neither lessened nor increased by priority of improvement, and the primary right of each owner is to protect himself and his lot from loss or inconvenience from the flow of surface water. The owner at the foot of the slope is under no obligation to allow his lot to continue as a reservoir for the surplus water of the neighborhood. He may shut it out by grading or otherwise and the fact that thereby he may incidentally increase the flow on the adjoining lot, neither makes him answerable in damages nor affects the adjoining owner's right in his turn to shut out the original, plus the increased flow on his lot. The owner cannot be coerced as to time or manner of improvement by risk of having put upon him the burden of providing for the flow upon others.

Some things of course he may not do. He may not proceed negligently so as to do unnecessary damage to others. But so far as he acts upon his right to protect his enjoyment of his own property, any incidental loss to his neighbor is damnum absque injuria. It is clearly settled, however, first, that he may not obstruct a natural channel for the flow of the water,

or a channel that has acquired the character of an easement; and, secondly, he may not gather surface water into a body and discharge it on the adjoining land.   His right is to shut out the invading water, as a common enemy, for the protection of his own land.

Notwithstanding the dictum in Bentz v. Armstrong, and the questionable application of it in a few later cases, these principles are fundamental and have never been successfully questioned.   The latest case on the subject is Strauss v. Allentown, 215 Pa. 96, in which it was sought to charge a municipality with damages for loss of value of land by increased flow of water from the change of surface conditions.   It was practically conceded throughout the case that an individual owner would not be answerable, and it was held that the municipality was equally exempt from liability from increased flow of water incidental to surface changes in the course of municipal development.

The qualification applied in this case that the right of the owner to shut out the surface flow from his lot is accompanied by an obligation to prevent it from flowing over the adjacent land and to lead it by artificial or other means to a sewer or other avenue of escape, is totally irreconcilable with the conceded right of protection of his lot already discussed, and is not sustained by authority or on general principles.   The cases in New Jersey, Connecticut and Massachusetts which have considered this exact question are uniformly against any such obligation.

Decree reversed and bill directed to be dismissed with costs.