Kuczineski *v.* Scranton Coal Company, New York, Ontario and Western Railway Company, Appellant.

Argued March 3, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Baldrige and Graff, JJ.

*Paul G. Collins,* and with him *M. J. Martin,* for appellant, cited: Tess v. Charleroi Home Building Company; 96 Pa. Superior Ct. 504; Strauss v. Allentown, 215 Pa. 96; Rielly v. Stephenson, 222 Pa. 252.

22

*Leo G. Knoll* and with him *Joseph B. Jenkins,* for appellee, cited: Rhoads v. Davidheiser, 133 Pa. 226; Hays v. Hinkleman, 68 Pa. 324.

OPINION BY GRAFF, J., May 6, 1930:

The plaintiff brought this bill in equity against the Scranton Coal Company and the New York, Ontario & Western Railway Company, praying that the defendants be enjoined from permitting culm, ashes, silt, stones and refuse from being washed down upon his land, and that damages be awarded for the injury occasioned to his property. The Borough of Dickson City and the State Highway Department of Pennsylvania were joined as additional defendants. The bill was dismissed as respects the Scranton Coal Company, and that part of the order joining the State Highway Department revoked. No decree or findings were made against the Borough of Dickson City. The court entered a decree against the New York, Ontario & Western Railway Company, ordering it to erect a suitable retaining wall between its property and the plaintiff's property, and also allowed damages to the extent of $500. From that decree the defendant railway company has taken this appeal.

Dundaff Street, in the Borough of Dickson City, is an old turnpike, now under the control of the Pennsylvania Department of Highways, and runs in a northeasterly and southwesterly direction, up a very steep grade on a mountainside. In the year 1882 the defendant railway company constructed its tracks upon a right of way adjoining the lot now owned by the plaintiff. The fill of this right of way, at the plaintiff's property, was approximately twenty-five feet in height, and narrowed until entirely eliminated at Dundaff Street, a short distance away. Because of the topographical nature of the locality, and the small amount of vegetation, the drainage of the area is difficult. Surface water flows down Dundaff Street until

it reaches the right of way of the defendant railway company, where it crosses said street.

On or about May 2, 1927, and several times thereafter, surface water from Dundaff Street flowed along the right of way of the defendant company to a point opposite plaintiff's property, and there washed down on his property ashes, culm and silt from defendant's fill. From the time of the construction of the right of way, in 1882, until this time, no damage was occasioned to the property now owned by the plaintiff, nor any complaint made. For many years prior to the date of the damage, surface water drained along Dundaff Street to the right of way of the defendant company, and thence in a westerly direction to a creek. Shortly before 1927, certain changes were made in Dundaff Street by the State Highway Department. The Borough of Dickson City is a mining community, and dwellings have been erected and improvements made from the time of the construction of the railroad company's right of way to the present.

The court below made the following finding of fact: "2. During heavy storms a large quantity of water flows along the right of way from a public road a short distance from the right of way, and so loosens the material of the bank that it encroaches upon plaintiff's lot, and part of it is carried by the water across the lot. Thereupon the defendant replaces the material on its embankment, and the next storm makes further deposits upon the plaintiff's lot;" and upon request of defendant found as follows: "14. The right of way line used by the New York, Ontario & Western Railway Company was built in the year 1882, and from 1882 approximately to the year 1926, there was no damage caused or complaints made because of the surface drainage water. The said right of way line of the railroad company is of ordinary standard railway construction, and is built after the approved standard method of constructing railroad lines."

The court below did not find that the defendant was negligent in the replacement and reconstruction of its fill, when it had been washed away by the storms. However, it was held that the washing down of the defendant's fill upon the plaintiff's property constituted a trespass, which should be enjoined. In this we conclude that the court was in error.

Where damage results because of a diversion of the surface water from its natural course, the upper landowner is liable in trespass: Rhoads v. Davidheiser, 133 Pa. 226; Hays v. Hinkleman, 68 Pa. 324. However, every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use, without negligence, unavoidable loss is brought upon his neighbor, it is damnum absque injuria. This is the universal rule of the common law, and nowhere is it more strictly enforced than in Pennsylvania: Strauss v. Allentown, 215 Pa. 96. The line of distinction is reached when the dominant owner cuts an artificial channel, by which what would otherwise be surface water is concentrated and discharged with greater force at a particular point on the servient land: Miller v. Laubach, 47 Pa. 154.

The plaintiff relies upon the case of Gordon v. Pettey, 291 Pa. 258, to sustain his position. In that case Gordon applied for an injunction to restrain Pettey from permitting a fill which he had constructed from washing down upon the plaintiff's property. This case is distinguishable from the one under discussion for the reason that the defendant was expressly notified prior to the construction of his fill, immediately before the damage occasioned, that it would wash down and over the plaintiff's property. As stated by the court on page 262: "Defendants, however, had the best knowledge which could be brought to them that what they were doing was fraught with danger, because appellees notified them not to make the fill, because of the likely result to their properties lying be-

low. It would seem that after being thus expressly warned, it was incumbent upon the defendants to take counsel with those who possessed the knowledge, as to whether what they were doing was likely to cause injury to those down hill.''

In the present case no offer was made to prove that any affirmative act upon the part of the defendant company since the construction of its railroad, more than forty-four years ago, caused any diversion of the surface water and consequent damage to the plaintiff's property. The evidence rather discloses that changing topographical conditions and work upon the highway caused a diversion of the water along the defendant's right of way toward the plaintiff's property. Over such agencies the defendant had no control. In Tess v. Charleroi Home Building Co., 96 Pa. Superior Ct. 505, it is held that there is no liability where dirt, soil and offscourings of lands of a dominant owner, following the making of improvements, without negligence, are carried and deposited upon the lands of a servient owner by surface drainage. The court there held that the principle announced in Strauss v. Allentown, supra, and Rielly v. Stephenson, 222 Pa. 252, to the effect that: ''Every man has the right to the natural, proper and profitable use of his own land, and if, in the course of such use without negligence, unavoidable loss is brought upon his neighbor, it is damnum absque injuria,'' was applicable.

For a period of more than forty years no damage was caused by the construction of the defendant's fill, nor was any complaint made thereof. Changing conditions and actions of third persons over which the defendant had no control caused a diversion of water to its property, and the consequent washing of its fill upon the plaintiff's property. The fill was replaced, as found by the court below, by ordinary, standard railroad construction, and was built after the approved method of constructing railroad lines.

There is not the slightest evidence of any negligence in connection therewith. Under such circumstances we conclude that no liability exists upon the part of the defendant company for the damage done.

The first assignment of error, to-wit, that the court erred in entering the final decree, is sustained.

The decree is reversed, at the cost of the appellee.