## Kunkle *v.* Ford City Borough, Appellant.

Argued September 28, 1934. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*H. A. Heilman,* with him *C. O. Morris,* for appellant.

*Charles E. Harrington,* with him *Harry P. Boarts,* for appellee.

OPINION BY MR. JUSTICE LINN, November 26, 1934:

The borough appeals from an order dismissing exceptions to the report of viewers. The amended petition for their appointment averred that the borough raised the grade, inter alia, of an alley "parallel with Fourteenth Street......and being along the northern boundary of the said Borough," thereby obstructing the flow of water in such manner as to leave it on a tract of land in which petitioner owned a number of lots, some as far as 600 feet from borough line, and all outside the borough limits. A number of exceptions were filed to the report of the viewers. We need only refer to one— that it appears by the report that the injury complained of was damnum absque injuria.

Prior to filing the petition for viewers, the appellee had sought redress for the same damage by an action of trespass, in which, after hearing his evidence, a non-suit was entered, on the ground that he had shown no

cause of action. That conclusion was affirmed without discussion: Kunkle v. Ford City Borough, 305 Pa. 416, 158 A. 159. The petition for viewers was then filed.

In support of its position that the court, as matter of law, should have held that the report of the viewers on its face shows there is no liability, several reasons are now presented, among them, first, that the damage is caused by surface water, which the borough is under no legal duty to receive over its land; second, that petitioner's property is outside the borough limits and does not abut on the improvement.

As we must sustain the first position, we need not consider the second. The report shows that the land on plaintiff's side of the borough line was swampy, though the extent and character of the swamp does not appear. Apparently the land inside the borough was lower than that outside, so that in times of heavy rain such rain water as was not immediately absorbed by the ground flowed over the land in its natural state into the borough. When the borough built up the land on its side, this natural flow of surface water was obstructed. On this subject the board of viewers made the following findings of fact: "That your Viewers, after considering all the testimony and having viewed the ground, are of the opinion and so find that the water condition complained of by the plaintiff, B. O. Kunkle, is a direct result of the filling and improving of the alley mentioned on the extreme northern boundary of Ford City Borough, and that this filling and improving so obstructed natural flow of the surface water from said Bellwood Garden so as to dam the same up and turn it back upon the plaintiff's, B. O. Kunkle, property." "6. That in March of 1928, the Borough of Ford City completed the filling and grading of a ten foot alley, being the northern boundary of the said borough and the southern boundary of the said plan of lots......

which caused the occasional bursts of water in times of freshets and storms, descending from the hills and inundating the land owned by the petitioner, to collect and thereby causing an accumulation of the said water to back up and flood the lands of the petitioner, by interfering with, and obstructing, the natural drainage of surface water from the plaintiff's properties." (Cf. Aron v. Philadelphia, 310 Pa. 84, 164 A. 777).

For such damage the law furnishes no remedy. In Strauss v. Allentown, 215 Pa. 96, 97, 63 A. 1073, the facts were thus quoted from appellant's argument: "Isabella Strauss owns a mill property lying outside but near and along the northern boundaries of the city of Allentown, a municipal corporation of the third class. The water that flows from a watershed, a large portion of which lies within the city limits, drains into the plaintiff's tailrace. As municipal improvements are made the volume of water is very greatly increased. The paving of streets, the opening and extension of streets, the making of gutters and drains, the building of houses, etc., prevents the water from sinking into the ground as it was accustomed to do to a large extent, and accumulates large volumes of water and accelerates its force so that great quantities of debris are carried into the tailrace and a deep gully has been washed out. The volume of water is of itself sufficient to cause back water in the tailrace. For these reasons the value of the mill property has greatly decreased. The city has made no effort to prevent the damage to the plaintiff's property. To recover for the damage that has been caused by the depreciation in the value of the property because of the interference with the free operation of the mill due to the dead water accumulated in, and the debris carried into, the tailrace the plaintiffs bring this suit." It appeared in that case that the city had not enlarged the area of the watershed or changed the flow

of the surface water in any way, except as a consequence of the gradual and ordinary development of rural into urban property. The city did not divert the water into artificial channels. In holding that there was no liability, we said: "Every man has the right to the natural, proper, and profitable use of his own land, and if, in the course of such use without negligence, unavoidable loss is brought upon his neighbor, it is damnum absque injuria. This is the universal rule of the common law, and nowhere is it more strictly enforced than in Pennsylvania......There is no sound reason why the same rule should not apply to municipalities as to individuals. A farmer with a piece of woodland on a hillside may clear out the underbrush or cut down the trees altogether, though thereby the water which had seeped slowly to the lower level is accelerated in its flow, and may cause damage: Kauffman v. Griesemer, 26 Pa. 407. The line of distinction is reached when he cuts an artificial channel by which what would otherwise be surface water is concentrated and discharged, with greater force on a particular point in the servient land: Miller v. Laubach, 47 Pa. 154. The same rule must apply to the natural and proper development of a municipality. Cities are authorized to open, grade and improve streets, and the abutting lot owners may build according to their requirements. In this natural change and development from agricultural or rural into urban territory some disturbance of the surface drainage is inevitable; but, without negligence, the municipality is not liable for the results: Carr v. Northern Liberties, 35 Pa. 324. Though a city may be authorized to construct sewers or an adequate system of drainage, it is not bound to do so, nor is it liable for an erroneous judgment as to what will be adequate: Fair v. Philadelphia, 88 Pa. 309."

In Rielly v. Stephenson, 222 Pa. 252, 70 A. 1097, it

appeared that surface water had been accustomed to flow over two adjoining lots and that one lot owner raised the grade of his lot with the result that all surface water thereafter flowed over the adjoining lot, the owner of which complained. As there was no charge of negligence in the manner in which the lot owner had improved his land, it was held that he was "under no obligation to allow his lot to continue as a reservoir for the surplus water of the neighborhood. He may shut it out by grading or otherwise, and the fact that thereby he may incidentally increase the flow on the adjoining lot neither makes him answerable in damages nor affects the adjoining owner's right in his turn to shut out the original, plus the increased flow on his lot. The owner cannot be coerced as to time or manner of improvement by risk of having put upon him the burden of providing for the flow upon others."

On the facts found by the viewers, quoted above, to which no exceptions were filed by the petitioner, the alleged damage appears to have resulted entirely by the interference with the flow of surface water during rainy periods; there is neither allegation nor finding that the borough acted negligently. The exceptions raising the point should have been sustained.

The appellee refers to cases in which municipalities were held liable for collecting surface waters and discharging them in bulk on private property, the latest being Mitchell v. City of New Castle, 275 Pa. 426, 119 A. 485. For such action the municipality is, of course, liable, but that is very different from the alleged wrong committed by the borough; no waters collected in the borough were discharged in the adjoining township in which appellee owned lots. Chatham Street, 191 Pa. 604, 43 A. 365, is also referred to, apparently for a sentence that "property is injured when its drainage is materially affected." In view of the well established

rule, as appears by the cases quoted above, that a municipality is not liable, any more than a private owner, for refusing to receive surface water, unless a natural channel is interfered with, the sentence quoted must be understood in that sense, and the report shows nothing to the contrary. The point for decision in the case was whether a nonabutting owner's damage was sufficiently "proximate, immediate and substantial" within the rule.

The order appealed from is reversed, the exception is sustained, and the record is remitted with instructions to dismiss the proceeding,