## Morton et al., Appellants, *v.* Dormont Borough.

Argued March 24, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

284

*Owen S. Cecil,* for appellants.

*A. C. Purdy,* for appellee.

OPINION BY MR. JUSTICE LINN, April 24, 1939:

The borough constructed two sewers, one in Arkansas Avenue and the other in Eastmont Avenue, to receive and carry away surface water, the first draining an area of about 100 acres and the second a somewhat larger area. The sewers are constructed of concrete or cement pipes, one being 4 feet in diameter and the other 2½ feet; they end at the borough line and discharge into plaintiffs' farm which abuts on the boundaries of the borough. This farm lies lower than the borough and prior to the action of the borough, had two small grass-grown ditches, 6 to 8 inches deep, beginning near the borough line and after uniting (forming a Y) extending across the farm; these ditches were fed by springs and also carried off surface water as it flowed from the watershed to and over plaintiffs' farm from time to time. The built up portion of the borough extends to the borough line dividing it from plaintiffs' farm. The evidence is that after the sewers were constructed they discharged water in such volume and force, after rain, as to flood the farm and require the construction of bridges to afford access between the separated parts. Viewers were appointed but awarded no damages. Plaintiffs appealed. The borough pleaded that the sewers were constructed pursuant to lawful authority and that plaintiffs were not damaged. At the trial a nonsuit was entered; this appeal is from the refusal to take it off. The learned trial judge said: "There has been apparently a sub-

stantial damage to the land" but he thought it was *damnum absque injuria.*

Municipal liability for damage resulting from drainage received careful consideration in *Strauss v. Allentown,* 215 Pa. 96, 63 A. 1073 (1906). Plaintiff had suffered damage to his mill race by the increased flow of surface water resulting from the construction of improved streets, buildings, etc., which interfered with the former disposition of the surface water. The water was not collected and diverted into artificial channels; it flowed, as it always had, into the tailrace because that was at the lowest point in the watershed. MITCHELL, J., said the question was "is the city liable to a property owner for the increased flow of surface water over or onto his property, arising merely from the changes in the character of the surface produced by the opening of streets, building of houses, etc., in the ordinary and regular course of expansion of the city." He concluded, "The line of distinction [between liability and nonliability] is reached when he cuts an artificial channel by which what would otherwise be surface water is concentrated and discharged, with greater force on a particular point in the servient land: *Miller v. Laubach,* 47 Pa. 154." Not having so collected and discharged the drainage, the city was held not liable. For the same reasons plaintiff was unable to recover in *Kunkle v. Ford City Borough,* 316 Pa. 571, 175 A. 412, though in that case, instead of increasing the flow over plaintiff's land, the borough, by grading an alley, prevented the water from flowing from plaintiff's land into the borough. Illustrations of liability resulting from collecting the water and so discharging it in volume at a point where it would not have been so discharged, will be found in *Kauffman v. Griesemer,* 26 Pa. 407; *Pfeiffer v. Brown,* 165 Pa. 267, 30 A. 844; *Lehigh etc. Co. v. Pittston etc. Co.,* 289 Pa. 492, 137 A. 672. See also *Meixell v. Morgan,* 149 Pa. 415, 24 A. 216.

We think there was evidence sufficient to go to the jury to determine whether damage resulted to plaintiffs' land from the collection and discharge of the drainage in large volume, within the rule of liability stated in *Strauss v. Allentown,* supra.

There is no merit in the motion to quash.

Judgment reversed and new trial awarded.