## Bowers et al. v. Price

*W. W. Van Baman*, for plaintiffs.

*Horace G. Ports*, of *Fisher, Ports & May*, for defendant.

ANDERSON, J., October 9, 1945.—Plaintiffs have filed a bill in equity alleging that defendant has changed the grade on the rear of his lot in Hanover, York

County, Pa., by filling it in with earth for its entire width, has laid a cement walk between the properties of the defendant and plaintiffs and has erected over a small porch between the two properties a gabled roof, all of which have caused rain water to drain into plaintiff's cellar, causing loss and damage to the property. They pray that defendant be enjoined from further so doing and be required to remove the improvements enumerated above and for further equitable relief. Defendant denied causing the damage of which plaintiff complains and denies any liability under the law for any injuries or damages alleged to have been inflicted and avers that any improvements made by him were wholly on his own property and within his legal rights and asks that the bill be dismissed.

### Findings of fact

1. That the properties of plaintiffs and defendant are approximately 30 feet by 150 feet in size; that both face on High Street Extended, and have a public alley in the rear, and that both are located in a built-up residential section of the Borough of Hanover, York County, Pa.

2. That plaintiffs' property is improved with a single house occupied by plaintiffs, approximately 24 feet in width, erected by a prior owner near the center of the lot and some distance back from High Street.

3. That defendant's property was originally improved with a single dwelling house, which defendant converted into two apartments in 1943, both of which are occupied by tenants.

4. That defendant's property is bounded along its western length by Fourth Street, an improved street of the Borough of Hanover, York County, Pa.

5. That the improvements made by defendant upon his property in 1943 consisted of remodeling the interior so as to have one apartment on the first and one apartment on the second floor; that access to the second floor was obtained by cutting an entrance through the

east side of the original house wall and providing an interior stairway. That defendant caused a sidewalk approximately two feet five inches in width to be laid from the front of said dwelling to the rear thereof, a distance of approximately 80 feet; that defendant likewise caused a small roof to be erected over the side entrance. That defendant likewise erected a garage facing on Fourth Street at the rear of the dwelling house and that the grade under the said garage was raised to the level of Fourth Street, and that the roof of the garage was spouted so as to drain all the water falling thereon to the gutter on Fourth Street.

6. That none of the improvements made by defendant encroached upon the property of the plaintiffs.

7. The improvements made by the defendant were installed without negligence, nor is negligence on the part of defendant alleged by plaintiff.

8. That prior to the improvements the elevation of defendant's lot was higher than the elevation of plaintiffs' lot and that the natural drainage was from a west to east direction, that is, from the defendant's lot onto plaintiffs' lot and from the rear of the lots toward the front on High Street.

9. That no natural channel for the flow of water existed across either defendant's lot or plaintiffs' property prior to the time the dwelling houses were erected thereon.

10. That no channel for the flow of water across defendant's property has been created by easement.

11. That defendant has not gathered surface water into a body upon his land and discharged it through an artificial outlet upon the land of plaintiffs.

12. That some water seeped into the cellar of plaintiffs' property prior to said improvement, the wall therein showing evidence of deterioration over a long period of years, but that since defendant erected the cement walk plaintiffs complained of considerable more water drains or seeps into their cellar, especially during and following a heavy rainfall.

13. That no irreparable damage has been caused to plaintiffs' property, and since the digging of a small ditch between the two properties the amount of water which has drained or seeped into plaintiffs' cellar has been appreciably diminished.

14. That the construction of a cement sidewalk or pavement along plaintiffs' house would alleviate the condition of which plaintiffs complain.

## Discussion

One of the leading cases on the question which has been consistently followed by our appellate courts is that of Rielly v. Stephenson, 222 Pa. 252.

"The owners of lots in cities and towns buy and own with the manifest condition that the natural or existing surface is liable to be changed by the progress of municipal development. All such owners have equal rights neither lessened nor increased by priority of improvement, and the primary right of each owner is to protect himself and his lot from loss or inconvenience from the flow of surface water. The owner at the foot of the slope is under no obligation to allow his lot to continue as a reservoir for the surplus water of the neighborhood. He may shut it out by grading or otherwise and the fact that thereby he may incidentally increase the flow on the adjoining lot, neither makes him answerable in damages nor affects the adjoining owner's right in his turn to shut out the original, plus the increased flow on his lot. The owner cannot be coerced as to time or manner of improvement by risk of having put upon him the burden of providing for the flow upon others.

"Some things of course he may not do. He may not proceed negligently so as to do unnecessary damage to others. But so far as he acts upon his right to protect his enjoyment of his own property, any incidental loss to his neighbor is damnum absque injuria."

To the same effect are Strauss v. Allentown, 215 Pa. 96, Kunkle v. Ford City Borough, 316 Pa. 571,

Morton et al. v. Dormont Borough, 334 Pa. 283, Lare et al. v. Young et al., 153 Pa. Superior Ct. 28. There is no evidence whatever that defendant in this case either obstructed a natural channel or a channel that had acquired the character of an easement, nor did he gather surface water into a body and discharge it upon the adjoining land. In fact he did nothing except make improvements to his own property, which were entirely upon his own premises and entirely within the law, and, if any damage incidentally resulted to the plaintiffs, it is what we term in law by the classic phrase "damnum absque injuria"—loss or damage occasioned without wrong for which there is no legal remedy. The chancellor was impressed with the apparent honesty and sincerity of purpose of plaintiffs, who unquestionably feel that their legal rights have been invaded, yet from a careful and studied consideration of the principles of the law as applied to the facts of the case it is apparent that there is no legal remedy.

In a case arising in York County, which went to the Superior Court, Markle et al. v. Grothe, 102 Pa. Superior Ct. 90, in which the factual situation was more aggravated than the case at bar, an injunction was refused by the lower court, which on appeal was affirmed by the Superior Court, which stated in part:

" 'Because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior.' This fundamental principle applies to springs, as well as surface water, and, generally speaking, gives the owner the right to the natural, proper and profitable use of his own land. If, in the exercise of this right without negligence, unavoidable loss is sustained by a lower owner it is damnum absque injuria: Strauss v. Allentown, 215 Pa. 96, 98. The dominant owner may even increase the flow of water by cultivating his land or developing it for natural and reasonable uses without liability for damage to the

servient owner . . . but he cannot concentrate the water, and by artificial means increase its flow or turn it by unnatural channels where it is not wont to flow. . . . We do not consider, however, that the accumulation of surface water in the excavations, as alleged in the case at bar, changed its character so as to prevent it from being legally returned, provided it was unincreased in volume, into its natural course in which it would have flowed before its interruption; that was a reasonable control within the defendant's rights. . . . What is a natural and reasonable use depends upon the facts in each case and is, ordinarily, for the determination of the chancellor, or the jury, as the case may be" . . .

The plans which were admitted in evidence and the testimony in the instant case show conclusively that water would naturally flow from the Price property unto and upon the Bowers property, and a lawful improvement upon the Price property which would tend to increase or accelerate this flow even to the detriment of the plaintiffs, would be damnum absque injuria. This rule has been frequently reiterated by our appellate courts, and has been held to apply to municipalities as well as private owners on the same well-reasoned theory.

"Every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use without negligence, unavoidable loss, is brought upon his neighbor, it is damnum absque injuria. This is the universal rule of the common law, and no where is it more strictly enforced than in Pennsylvania. After elaborate and repeated argument, and the most mature consideration, it was applied to a case admittedly of great hardship, difficulty and doubt, involving a serious choice of evils, in Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126. No ordinary case could be sufficient to raise a further doubt on the rule of its application where the use is proper and the damage unavoidable. . . .

"There is no sound reason why the same rule should not apply to municipalities as to individuals. A farmer with a piece of woodland on a hillside may clear out the underbrush or cut down the trees altogether, though thereby the water which had seeped slowly to the lower level is accelerated in its flow, and may cause damage. . . . The line of distinction is reached when he cuts an artificial channel by which what would otherwise be surface water is concentrated and discharged, with greater force on a particular point in the servient land. . . .

"The same rule must apply to the natural and proper development of a municipality. Cities are authorized to open, grade and improve streets and the abutting lot owners may build according to their requirements. In this natural change and development from agriculture or rural to urban territory some disturbance of the surface drainage is inevitable, but without negligence the municipality is not liable for the results." . . . Strauss v. Allentown, supra.

It is therefore apparent from the above findings of fact and the principles of law applicable thereto, that defendant has committed no act, negligent or otherwise, resulting in irreparable damage to plaintiffs for which he could be held responsible at law or in equity and that the bill must therefore be dismissed.

### Conclusions of law

1. That defendant is the owner of a dominant or superior heritage and has an easement in the servient or inferior tenement of plaintiffs for the discharge of all waters which by nature arise in or flow or fall upon the superior.

2. No easement has been created for the flow of surface water over any part of the defendant's lot.

3. That the injunction requested must be refused.

4. That the bill be dismissed at the costs of plaintiffs.

*Decree nisi*

And now, to wit, October 9, 1945, upon consideration of the foregoing case, it is ordered, adjudged and decreed:

1. That the injunction requested be refused.

2. That the bill be dismissed at the costs of plaintiffs.

3. That the Prothonotary of York County, Pa., enter this decree as a decree nisi and give counsel in the case notice, as required by the rules of equity practice, that unless exceptions are filed within 10 days from the entry of the decree nisi the same shall be entered as a decree absolute as of course.