## In re Relocation of East Twelfth Street

*A. Grant Walker,* of *Gunnison, Fish, Gifford & Chapin,* for exceptants.

*Edward M. Murphy,* contra.

KITTS, P. J., July 2, 1943.—This eminent domain case comes before the court on exceptions filed to a majority report of viewers together with a motion to vacate the appointment of the entire board.

It appears that in 1919 plaintiff purchased the land in question, known as the Dunn Brick Works, containing 4.31 acres of land. This was used as a brick works plant. In the spring of 1942 the Department of Highways of the Commonwealth of Pennsylvania surveyed East Twelfth Street for the purpose of paving and widening the same passing by this land, and entered into an arrangement with the City of Erie whereby the city was to assume all damages, whereupon the City of Erie did on June 26, 1942, enact an ordinance actually appropriating plaintiff's land and approved the proposed improvement by the Commonwealth of Pennsylvania, assuming all damages therefor.

At the time of the said purchase and continuing up until the completion of the present improvement there existed across the servient land a slight depression through which, in times of extremely heavy rains or floods, a small amount of water flowed but insufficient in volume to disturb weeds and grass that grew in the bottom of this depression. There was no evidence to establish that this might be called a creek or well-established waterway. The undisputed testimony shows that what little water flowed through this land during flood time and from seasonal thaws in no way interfered with the use of the land by the Dunn Brick Works.

In 1934 the Works Progress Administration, acting under instructions of the Engineering Department of the City of Erie, cleaned out the ditches along East Twelfth Street and, in doing so, it cleaned out this so-called depression in claimant's land. The evidence discloses that this in no wise interfered with the use of the land nor did it increase the water flow.

Previous to the present improvement there existed under the roadway of East Twelfth Street a small culvert running from south to north. This culvert did not carry a constant flow of water but was for drainage purposes only in high flood times or to carry away surface water from melting snow. There is a swamp or low land on the south side of Twelfth Street immediately opposite the plant of the Dunn Bricks Works from which the water, up until the time of this improvement, did not drain through or across the servient property. In other words, the level of this swampy portion of land did not reach the bottom of the culvert as it then existed. Under the present improvement the culvert was enlarged and lowered about four feet so that it drained through claimant's land all of the water which had formerly been south of Twelfth Street and which had drained away in another manner mostly toward the east into another small creek along the eastern boundary of claimant's land. In order to carry away the flow of water received in this culvert, the Commonwealth dug a regular waterway through claimant's land extending from the north end of the culvert entirely through to a point where it could join a regular existing waterway or creek north of claimant's land. A ditch was dug 18 feet in width across the top, 10 feet in depth, and 3 or 4 feet wide at the bottom, and the evidence discloses that since completion it has continued to carry a substantial flow of water. This ditch is approximately in the middle of the land in question. This culvert and ditch also receive drainage of water that never heretofore flowed through or across plaintiff's land.

Viewers were appointed and on June 4, 1943, two of the viewers filed the majority report which was confirmed nisi by this court. The third viewer filed a minority report and promptly thereafter exceptions were filed by plaintiff to the majority report. Plaintiff also filed a motion asking us to vacate the present board and for the appointment of a new board in its

place to view the premises, take testimony, and make a disposition of the matters in dispute.

Plaintiff filed eight exceptions but we hold that it will be unnecessary to dispose of all of these seriatim. The first exception reads as follows:

"(1) Disallowance of damages by said two viewers is based entirely on legal conclusions reached by them and not on factual findings that the property of claimant has not been damaged by reason of the improvement in question. The legal conclusions on which damages were refused are as follows:

"(*a*) That inasmuch as the contour map made by the City of Erie in 1928 shows that the point at which the ditch was dug was the lowest land in that vicinity, the digging of the ditch and the making of a permanent waterway through the land of the claimant does not entitle the claimant to any damages even though damages were suffered thereby.

"(*b*) That because a branch of the Government known as Works Progress Administration, under direction of the City of Erie, in 1934 cleaned out this so-called creek, any damage suffered by the claimant was suffered at that time, and any claim for damages in this proceeding is barred by reason of the statute of limitations, even though it is admitted that the ditch was greatly enlarged under the recent improvement.

"(*c*) That there can be no legal recovery if a stream of water existed at any time, no matter how small, and was enlarged by the improvement to no matter how great a size, thereby resulting in an increased volume of water.

"(*d*) That the claimant is not entitled to damages by reason of change of its property from rural to urban uses.

"(*e*) That no damages are recoverable in any case, because proceedings were not instituted within six years of 1934."

This exception raises two legal questions, to wit: (1) Is this damnum absque injuria? (2) Has the statute of limitations run on account of the entry of the W. P. A. in 1934? We shall discuss these two legal questions in their order.

At the argument on these exceptions and the motion mentioned, supra, held June 24, 1943, learned counsel for plaintiff maintained that the learned city solicitor had inveigled the two majority viewers into entering in their majority report what was equivalent to a non-suit, or, at the least, gave them binding instructions to decide this case entirely upon law and not upon facts that could be deduced from the evidence. Certain other charges were made which will be discussed later in this opinion.

The city, through its solicitor, strenuously maintains that there can be no damages, that this is damnum absque injuria, and cites two cases: Strauss v. Allentown, 215 Pa. 96, and Kunkle v. Ford City Borough, 316 Pa. 571. A careful study of these cases discloses that they are easily distinguishable from the case at bar. In Strauss v. Allentown, supra, claimant was the owner of a mill property which was fed by a millrace. The City of Allentown, in the general improvement of its streets, increased the volume of water that flowed into this millrace sufficiently to damage the use of the mill. The Supreme Court, in passing upon this question, lays stress on the fact that no new area was drained into the millrace but simply by general improvements more water from the same area reached the millrace. This is discussed at length on page 97 of the opinion. It was held that the city had not diverted the water into any artificial channels and that it flowed into plaintiff's tailrace as it had done before because the race was at the lowest point of the watershed. The court went on to say (p. 98):

"The line of distinction is reached when he cuts an artificial channel by which what would otherwise be

surface water is concentrated and discharged, with greater force on a particular point in the servient land . . ."

By applying the reasoning laid down in this case to the facts of the case at bar it is readily ascertained that there was a new channel cut through the land, that the culvert was lowered four feet, draining a large area of land which never before drained through this culvert, and an actual invasion of claimant's land by the construction of a large open ditch which not only received the water south of Twelfth Street but water west of the land and north of Twelfth Street which had not previously drained into, upon, or across the servient land and which, by reason of the digging of these ditches, the construction of sewers, manholes, and so forth, leads a new area of drainage into this artificially constructed waterway. Surely, under all of the evidence, it cannot be said that this is damnum absque injuria.

The other case, Kunkle v. Ford City Borough, supra, is not at all in point. In that case Mr. Justice Linn, speaking for the Supreme Court, held, in effect, that a municipality is not liable for damages resulting from a municipal improvement alleged to obstruct the flow of surface water where there is no interference with any natural channel nor the collection of such water and its discharge in bulk, and at page 573 of the opinion the court said:

"The report shows that the land on plaintiff's side of the borough line was swampy, though the extent and character of the swamp does not appear. Apparently the land inside the borough was lower than that outside, so that in times of heavy rain such rain water as was not immediately absorbed by the ground flowed over the land in its natural state into the borough. When the borough built up the land on its side, this natural flow of surface water was obstructed."

This, in reality, was a situation where Ford City Borough dammed up the water, thereby causing an ac-

cumulation to back up and flood the land of petitioner, and is not in point at all with the evidence in the instant case.

The Supreme Court further held that no waters collected in the borough were discharged in the adjoining township in which the petitioner (Kunkle) owned his lot.

We doubt very much that the old depression through plaintiff's property was really a watercourse. See Kunkle v. Ford City Borough, 305 Pa. 416. Quoting from the bottom of page 419, the court said:

"A commonly accepted definition of a watercourse is a 'stream of water usually flowing in a definite channel, having a bed and sides or banks and discharging itself into some other stream or body of water' . . ."

The court went on to say (p. 420):

"To constitute a watercourse, there must be unmistakable evidence of frequent action of running water, and a distinction is to be taken between a regular flowing stream of water, which at certain seasons is dried up, and those occasional bursts of water which in times of freshets and storms descend from the hills and inundate the country."

The court also held that public bodies are liable for injury caused by diverting rainwater from its natural channel and casting it upon private property.

In the instant case it is not controlling whether or not this so-called depression or stream, whatever it may be, was a watercourse because, by the improvement, the City of Erie has entirely changed the character of the drainage and enlarged the area of the watershed, and it has dug an artificial channel by which what would otherwise be surface water is concentrated and discharged with greater force into, upon and across the servient land, and the City of Erie went outside of the limits of its jurisdiction and did not stay within the limits of the streets and brought into, upon, and across this land additional drainage actually in-

terfering with the natural drainage or flow of the surface water. In a municipality's authorized right to change the grade of streets or alleys and make improvements thereon can it be said that such municipality has the right to go outside of this area of improvement abutting the land in question and drain surface water onto this area that never before either fell from the heavens or naturally drained thereon? We say this is beyond the jurisdiction given to her by law. See Mitchell v. City of New Castle, 275 Pa. 426, and Morton et al. v. Dormont Borough, 334 Pa. 283. In the Mitchell case, supra, the court held (syllabus) :

"Every public body is liable for a resulting injury, caused by diverting rain water from its natural channel and casting it upon private property."

See also Hughes et ux. v. Elizbeth Borough, 343 Pa. 175.

As to the second question, the barring of claimant's right of recovery by the statute of limitations, the entry of the W. P. A. upon this land was not a condemnation. If anything, it was a permissive entry. The actual appropriation took place when the ordinance was enacted by the City of Erie. Certainly plaintiff would have had no standing in court to have asked for damages at the time the W. P. A. entered in and upon its land, nor did the City of Erie at that time pass any ordinance or take any steps whatsoever to condemn or appropriate the land in question. See 14 Standard Pa. Practice 482, sec. 193. It is our opinion that anything done by the W. P. A. had nothing to do with the statute of limitations which began to run upon enactment of said ordinance.

The remaining exceptions deal with certain irregularities in the viewers' report, the fact that they met in the city hall on two occasions, and the further allegation that the city solicitor prepared the majority report for the viewers.

It is clear under the law that all meetings held by a board of viewers shall be in the courthouse or in such other place as the court may designate. In the instant case all the testimony was taken at the courthouse. Two meetings, however, were held in the city hall. Both attorneys were present and no objections were made thereto. We are not approving the meeting place in the city hall. The meetings should be held according to law. Inasmuch as we will set aside the majority report and remand this entire proceeding to the present board of viewers, we will enter no order on exceptions 3, 4, 5, 6, 7, and 8, but call to the attention of the viewers that in all future cases where there is a disagreement of the board of viewers the majority report should be in accordance with the principles laid down in 14 Standard Pa. Practice secs. 126, 127. In the file we found the oath of one viewer only.

There is one more important phase of this proceeding that must not be passed by without comment. Counsel for plaintiff accused the city solicitor of preparing the majority report. The city solicitor did not deny this. This practice is not to be approved. But let us pass on to another important phase. For some reason or other it was not shown to this court who prepared the minority report. While this viewer is a man of integrity, he is not learned in the law, and of course he had a right to go to any neutral attorney, engineer, or other layman to assist him in preparing his minority report. A careful reading of the same convinces this court that it was not prepared by this viewer. The language therein contained surely arises from one learned in the law and sounds to us exactly like language heretofore emanating from one of the Masonic Temple law offices.

The rule granted on the motion to vacate the appointment of this board of viewers is overruled and discharged. The first exception mentioned, supra, be and the same is hereby sustained and, in view of the foregoing, we make the following

*Order*

Now, to wit, July 2, 1943, the majority report of the viewers in this case is hereby set aside and the whole matter in controversy is hereby referred back to John B. Young, M. J. Gallagher, and Ben E. Briggs, members of the original board of viewers, to properly consider and determine the whole subject of litigation in this case according to law and according to the evidence and to make and file a new report not inconsistent with this opinion.